STYLES, Regional Director of National Labor Relations Board, for and on behalf of National Labor Relations Board, v. LOCAL 760, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, A. F. L.

No. 1152.

United States District Court
E. D. Tennessee, N. D.
Aug. 31, 1948.

Robert N. Denham, Gen. Counsel, NLRB, David P. Findling, Associate Gen. Counsel, NLRB, and Winthrop A. Johns and Robert E. Mullin, Attys., NLRB, all of Washington, D. C., for petitioner.

Porter Greenwood, of Knoxville, Tenn., for Roane-Anderson Co., charging party.

W. O. Lowe and J. E. Blankinship, both of Knoxville, Tenn., for respondent.

TAYLOR, District Judge.

Petitioner brought this action for an order enjoining and restraining the respondent from engaging in conduct in violation of Section 8(b), subsection 4(a), of the National Labor Relations Act, 29 U.S.C.A. § 158(b) (4) (A), pending final adjudication by the National Labor Relations Board with respect to charges of unfair labor practices lodged against respondent by Roane-Anderson Company, employer of members of the respondent union. Jurisdiction of the Court to grant the relief sought is conferred by Section 10(*l*) of the Act, 29 U.S.C.A. § 160(*l*), and jurisdictional facts appear in the proof that the employees concerned are engaged in occupations that intimately affect the flow of interstate commerce.

Factually the case is not complicated. Roane-Anderson Company is a contractor with the Atomic Energy Commission, an agency of the United States Government. Prior to July 1, 1948, Roane-Anderson Company was ordered by the agency to let a subcontract for replacing lighting fixtures at a school building in Oak Ridge, Tennessee, where Roane-Anderson by its contract maintains and operates the facilities of the town site. The sub-contract was let to Kiser Electric Company on or about July 1, 1948. Kiser Electric Company, the lowest bidder, commenced performance of its contract about July 23, 1948, employing non-union electricians.

On July 29, 1948, and July 30, 1948, maintenance electricians, linemen and trouble men, members of respondent, Local 760, employed by Roane-Anderson in the maintenance of electric facilities left their jobs. Thereafter, July 31, 1948, Roane-Anderson, as provided by the Act, filed against respondent charges of unfair labor practices, its amended charges of August 16, 1948, against respondent reciting that:

"(a) On or about July 29, 1948, it, by its officers, agents, or employees, induced and encouraged certain employees of the undersigned employer to engage in a strike or concerted refusal in the course of their employment, to handle or work on articles or materials, or to perform services, and did engage in such strike or concerted refusal, where an object thereof was to force or require the undersigned employer to cease doing business with the Kiser Electric Company, Knoxville, Tennessee.

"(b) By the above and by other acts, the named labor organization, by its officers, agents or employees, has restrained and coerced employees in the exercise of their rights as guaranteed in Section 7 of the Act [29 U.S.C.A. § 157].

"The undersigned further charges that said unfair labor practices are unfair labor practices affecting commerce within the meaning of the said Act."

It is alleged in the petition that petitioner caused an investigation to be made of the charges and that from the evidence disclosed he has reasonable cause to believe, and believes, that the charges against respondent are true, also that petitioner has reasonable cause to believe that respondent has engaged in acts and conduct in violation of Section 8(b), subsection 4(a) of the Act, and affecting commerce within the meaning of Section 2, subsections (6) and (7) of the Act, 29 U.S.C.A. § 152 (6, 7). Proof on file shows that petitioner has complied with the statutory conditions precedent to petitioning for an injunction.

Pursuant to a show cause order, respondent has filed its answer, and a hearing has been had as provided in Section 10, subsection (l). In its answer respondent denies that there has been any violation of the Act. More specifically it denies that a strike was called, orders given, threats or promises of benefits made, or the electrical employees in any manner caused by respondent to leave their employment, or that respondent has as an objective to force or require Roane-Anderson to cease doing business with Kiser Electric Company. By way of avoidance the answer avers that the electricians, in leaving their jobs, were acting upon their individual responsibilities, that any conversations had and statements made by officers of respondent in connection with the work cessation constituted a valid exercise of the constitutional right of free speech; and that if those conversations or statements carried the import of a strike call they were unauthorized.

In compliance with the statutory mandate and in order that it might be properly advised as to the action which it "deems just and proper" in the circumstances, the Court granted the parties an extended hearing. Having heard the testimony of a large number of witnesses and examined the exhibits on file, the Court is of the opinion that petitioner had reasonable cause to believe that the charges lodged against respondent are true. Over one hundred employees were involved in the work stoppage. They quit work on July 29, 1948, and July 30, 1948, about forty leaving the first day, the others the next. It is apparent that in quitting they sought to avoid the status of strikers. A number of them on the date of their leaving asked for terminations and gave as their reason that they were quitting for better jobs, and this was the general explanation the employees gave of the stoppage. Applied to a single individual, the reason prob-

ably would have been credible. It inspires no confidence, however, when applied to a hundred men, who are members of the same local, who have admitted in some instances that they were dissatisfied because a subcontract was awarded to a company employing non-union men, and who quit their jobs almost en masse. After-events also have wholly refuted the given reason. Many of the employees have not since worked at any kind of job, but have kept themselves in a stand-by status, awaiting orders from their union offices. Almost half of the quitting employees lived at Oak Ridge. Yet despite their avowed purpose of going to better jobs, they did not indicate any intention of giving up their leases on the Oak Ridge residences.

Following the quitting of the electricians, officials of Roane-Anderson contacted officials of Local 760 in regard to the furnishing of emergency maintenance crews during the stoppage, and steps were taken by the officials to designate such crews. But before any crews commenced work, the union officials reconsidered the matter and cancelled the designations. It is significant that designation of emergency maintenance crews is a tacit admission of strike status, and the retreat of the union officials in this regard further indicates a design technically to avoid that status.

Concerted action in this instance, while perhaps not unique, was unusual. The customary strike vote does not appear to have been taken. Union officials posted themselves where they could easily contact the employees as they reported for work, or traveled over the town site, visiting crews while at their jobs. The word was passed along by these subordinates of the union that the men were quitting and that the business manager of the union "wanted them to come out." There was no question in their minds as to why he wanted them to come out. One of the quitting employees stated in an affidavit: "Someone told us the day shift had quit. We knew that it was over the fuss about the non-union contractor coming to work at the Glenwood school."

Nothing in the testimony creates a reasonable doubt in the Court's mind that there existed probable cause for the petitioner to believe the respondent guilty of unfair labor practices. Though there appears to have been a studied effort on the part of respondent to avoid the technical act of calling a strike, the petitioner's position that a strike was induced by respondent is substantially maintained. In explanation of their work cessation the employees said: "We are quitting to go to better jobs." Upon investigation the petitioner has construed their actions as equivalent to a statement: "We are going on strike to coerce Roane-Anderson into ceasing to deal with Kiser Electric Company." Considered out of their context of attendant facts, the statements would bear little comparison, but in view of what the investigation and hearing have disclosed construing the statements as synonymous would not be unreasonable.

■ It is urged by respondent that there must have been promises or threats aimed at quitting or non-quitting employees. It is not, however, necessary that actual promises or threats be found, but only that petitioner had reasonable grounds for believing that there were promises or threats, or their equivalents. In the information conveyed to the employees that their union leader wanted them to come out there was no express threat, but only a member of a modern, sternly-disciplined union fully appreciates the latent quality of a message of that kind, which, to him, may constitute far more than mere inducement.

■ Respondent also urges that any conversations between the union officers and the employees and any statements made by the officers to the employees were in exercise of the right of free speech, guaranteed by the First Amendment of the Constitution and protected by Section 8(c) of the Act, 29 U.S.C.A. § 158(c). But Section 8(c) refers to expressions of views, arguments, or opinions, unaccompanied by threats of reprisals or promises of benefits. The concerted action, apparent here, was not the result of expressions of views, arguments, or opinions. It was the result of the transmission of information that the electricians were quitting and that the business manager of their union wanted all of the employees to come out, information which in its results, it may well be found, was equivalent to a directive, violative of the Act. This

is not the sort of freedom of speech which is guaranteed and protected.

 On the basis of the foregoing the Court finds that petitioner had reasonable cause to believe the misconduct charged has been committed and will continue unless restrained and is of the opinion that the status quo ante should be resumed by the respondent. A prima facie case has been made out by the petitioner, and that is all that is required as a condition precedent to the granting of an injunction. Section 10(*l*); Evans v. International Typographical Union, D.C., 76 F.Supp. 881. An injunction, accordingly, will issue, as prayed in the petition.

## Order

Charges of unfair labor practices by respondent having been lodged with petitioner, who caused an investigation of the charges to be made, as required by the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., and on the basis of disclosures resulting from the investigation has filed his petition in this Court alleging the existence of probable cause to believe that the charges are true and praying that an injunction issue restraining respondent, its agents, servants, employees, attorneys, and all persons in active concert or participation with it, from calling, engaging in, or inducing or encouraging the employees of Roane-Anderson Company, by orders, threats, promises of benefits, or any other like acts or conduct, or by permitting any such to remain in existence or effect, to engage in, a strike or a concerted refusal in the course of their employment, to use, transport or otherwise handle or work on articles or materials or to perform services for Roane-Anderson Company in order to force or require Roane-Anderson Company to cease doing business with Kiser Electric Company, pending final disposition of the charges by the National Labor Relations Board;

And, pursuant to a show cause order a hearing having been had on the petition and respondent's answer and the Court having found from testimony of witnesses and exhibits on file that about one hundred electricians, members of Local 760, International Brotherhood of Electrical Workers, A. F. L., did on July 29, 1948, and July 30, 1948, leave their jobs with Roane-Anderson Company at Oak Ridge, Tennessee, and that probable cause existed for a belief on the part of the petitioner herein that respondent, its agents, servants, employees, attorneys, and/or persons in active concert and participation with it, called, engaged in, or induced or encouraged the aforesaid electrical employees of Roane-Anderson Company, by orders, threats, promises of benefits, or other like acts or conduct, to engage in a strike or a concerted refusal in the course of their employment to use, transport or otherwise handle or work on articles or materials or to perform services for Roane-Anderson Company in order to force or require Roane-Anderson Company to cease doing business with Kiser Electric Company, a sub-contractor with Roane-Anderson Company using non-union labor on an electrical job in connection with one of the Oak Ridge school buildings; that the strike or concerted cessation of work has continued, is continuing, and will continue unless restrained; that the electrical employees of Roane-Anderson Company are engaged in occupations affecting interstate commerce and that the work cessation is a hindrance to the free flow of that commerce;

The Court having further found that petitioner has complied with the conditions precedent to the filing of a petition for injunction, as required by the National Labor Relations Act and has made out a prima facie case against the respondent on the charges of engaging in unfair labor practices in violation of section 8(b), subsection 4(A), and affecting commerce within the meaning of section 2, subsections (6) and (7), of the Act; and the Court having held that resumption by respondent, its agents, servants, and employees, of the status quo ante is required and that the work cessation by the electrical employees aforesaid should be enjoined;

It is, therefore, ordered by the Court that the respondent, Local 760, International Brotherhood of Electrical Workers, A. F. L., and its agents, servants, employees, attorneys, and all persons in active concert or participation with it, be and they are hereby restrained from calling, engaging in, or inducing or encouraging the employees of Roane-Anderson Company to engage

in, by orders, threats, promises of benefits, or any other like acts or conduct, or by permitting any such to remain in existence or effect, a strike or a concerted refusal in the course of their employment to use, transport or otherwise handle or work on articles or materials or to perform services for Roane-Anderson Company in order to force or require Roane-Anderson Company to cease doing business with Kiser Electric Company, pending final disposition of the aforementioned charges by the National Labor Relations Board.